FILED \_\_\_ RECEIVED
\_\_\_ ENTERED \_\_\_ SERVED ON
COUNSEL/PARTIES OF RECORD

APR 20 2011

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| TADARYL WILLIAMS | 3:09-cv-00678-LRH-VPC |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| GREGORY MARTIN, ET AL. | April 20, 2011 |
| Defendants. | |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's motion for prospective injunctive relief (#'s 1-3 & 13).[1] Defendants opposed (#41) and plaintiff replied (#49). The court has thoroughly reviewed the record and recommends that plaintiff's motion for prospective injunctive relief (#13) be denied.

## I. HISTORY & PROCEDURAL BACKGROUND

Plaintiff Tadaryl Williams ("plaintiff") is an inmate at High Desert State Prison ("HDSP") in the custody of the Nevada Department of Corrections ("NDOC") (#23). Plaintiff's complaint alleges violations of his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment due process and equal protection rights (#1-1). Pursuant to 28 U.S.C. § 1915A, the court previously screened the complaint and permitted the following claims to advance: (1) due process violation against defendants Large and Willis for failure to process plaintiff's grievances, and (2) Eighth Amendment deliberate indifference to a significant medical need against all defendants, except defendants Large and Willis (#10).

---

[1] Refers to the court's docket numbers. Docket entries #1-3 and #13 are duplicate entries. The court will refer to plaintiff's motion as docket #13 throughout this Report and Recommendation.

1    Plaintiff's complaint arises from an incident on or about February 26, 2009, at which time plaintiff developed blood clots in his legs that defendants did not treat for over five days (#1-1, p. 5). Plaintiff claims the delay in treatment resulted in pain and long-term disability. *Id.* Plaintiff's due process claim alleges that defendants Large and Willis refused to process his grievances related to this incident, thus preventing him, due to failure to exhaust his administrative remedies, from pursuing a previously filed action based on the same set of facts. *Id.* at 6. Plaintiff's deliberate indifference claim against all defendants other than defendants Large and Willis relates to defendants' deprivation of medical care, which plaintiff alleges was due in part to the prison's funding priorities. *Id.* at 8.

Plaintiff filed the instant motion along with his complaint on November 18, 2009 (#'s 1-1 & 1-3). This court ordered that the motion be filed and that defendants have the opportunity to provide an opposition, and plaintiff a reply (#10). The motion only addresses plaintiff's surviving Eighth Amendment claim (#13). In his motion, plaintiff alleges that by "placing Plaintiff back in prison confinement conditions" his sedentary time increases, "which directly caused Plaintiff's previous two blood clots." *Id.* at 1. Plaintiff believes that "being placed in these inhumane prison conditions would cause irreparable injury, inducing a third blood clot, perhaps fatal." *Id.* In order to prevent this outcome, and to address plaintiff's concerns about ongoing medical treatment for his vein condition, deep vein thrombosis ("DVT"), plaintiff proposes a patient treatment plan as his request for injunctive relief. *Id.* at 24. Plaintiff's requested injunctive relief includes the following:

   1. A doctor that is a Blood Clot Specialist to examine Plaintiff bi-monthly that is not associated with the NDOC.
   2. The NDOC establish a Specialty Clinic for inmates experiencing blood clots.
   3. Weekly Doppler Exams to follow and chart blood flow.
   4. Weekly EKG
   5. Weekly EEG
   6. Weekly Pro-Time Monitor
   7. Chart/graph Plaintiff's daily diet, exercise and lifestyle to determine what caused blood clots.
   8. Recreation (Therapeutic for Circulation) Walking 2 hrs per day minimum
   9. Physical Therapy Daily (Treadmill, Stationary Bike, Whirlpool)
   10. No Confinement Conditions of 16 hr, 18hr, 22hr, 23hr a day lockdown in a cell (or infirmary) which increases sedentary which caused previous two blood clots
   11. Permanent Bottom Bunk Pass
   12. CANE

        13. Follow up Medication (Coumadin) Indefinitely
        14. Transfer to a NDOC facility (NNCC Medical Unit) that can accommodate this medical treatment plan
        15. Light Duty Work Pass
        16. Properly updated Medical Records

*Id.*

As support for plaintiff's motion and his personalized medical plan detailed above, plaintiff offers copies of several inmate request forms, kites, letters he drafted to NDOC officials regarding his condition, responses from NDOC officials, medical records revealing results of Doppler imaging and duplex sonography, information regarding blood clots from MedicineNet.com, NDOC Administrative Regulation ("AR") 613, plaintiff's declaration, and the *Report Prepared for the National Prison Project of the ACLU: Review of Medical Records from Ely State Prison*. *Id.* at 25-56. Plaintiff's communication with NDOC officials via inmate requests, kites, and letters reveals that NDOC offered plaintiff two hours of yard time per day, followed him closely, and medicated him with an anti-coagulant; alerted him that facility transfer for medical purposes must be ordered by a doctor; assured that he would be housed appropriately for his condition; and ordered him to have only a belly chain and a cane. *Id.* at 25-26, 34, 36.

Defendants oppose plaintiff's motion, stating that "[plaintiff's] request is not narrowly drawn and the least restrictive means as required under the Prison Litigation Reform Act ("PLRA"); Plaintiff will not suffer irreparable injury . . . ; and Plaintiff is not likely to succeed on the merits of his Eighth Amendment claims" (#41, p. 2). Defendants argue further that "[p]laintiff was housed in administrative segregation due to his own request;" that he "provides no medical evidence whatsoever to support his allegations that being in administrative segregation caused him to be sedentary, which in turn cause [sic] his blood clot;" and that his "medical records do show that Plaintiff received appropriate medical care for his DVT." *Id.* at 5-6 (emphasis omitted). Finally, defendants note that plaintiff's complaint about the five days which elapsed between February 26, 2009, when he declared a medical emergency to the prison, and March 3, 2009, when he received treatment, "is nothing more than a short delay in medical treatment, which resulted in no harm or injury." *Id.* at 7. Defendants state that plaintiff's medical records reveal that he did not suffer

3

permanent damage and that plaintiff's allegations are "a mere disagreement with his treating physician." *Id.* at 8.

Defendants submit plaintiff's case notes and medical records in support of their opposition (#43-1; 43-2 (*sealed*)). The Offender Information Summary includes a note from February 13, 2009, stating that plaintiff was housed in administrative segregation due to his own request (#43-1, p. 6). A similar note appears on the October 23, 2009; October 26, 2009; and December 4, 2009 entries, and plaintiff repeatedly requested to be housed in administrative segregation throughout 2008. *Id.* at 6-7. Plaintiff also received 180 days in disciplinary segregation for an incident that occurred on May 27, 2010. *Id.* at 7.

Plaintiff's medical records confirm that he complained of right thigh and calf pain on February 26, 2009 and February 27, 2009 (#43-2, p. 2). Plaintiff saw defendant Martin on March 3, 2009, at which time he was transported to William Bree Ririe Hospital for a right leg venous Doppler study. *Id.* The study confirmed a DVT and defendant Martin scheduled plaintiff to receive subcutaneous Lovenox and oral Coumadin, both anti-coagulant medications. *Id.* at 3. Plaintiff's medical records reveal ongoing observation of plaintiff's condition by medical staff, with frequent updates entered into his record regarding his status and treatment plan throughout the months of March through August. *Id.* at 3-9.

In plaintiff's reply brief he comments that defendant Martin and other medical staff told him that "he has suffered permanent damage in his veins in his right leg and right ankle, and should be on [C]oumadin medication indefinitely" (#49, p. 3).[2] He comments further that "[r]egardless of plaintiff requesting protective segregation or not, Defendants cannot place Plaintiff in inhumane conditions of confinement which directly contributes to sedentary conditions which caused his blood clots." *Id.* Plaintiff's supporting declaration states that he "was told by Dr. Hoffman, Dr. Aranas, Dr. John Scott, Nurse Tim Ward, Nurse Bebe Clark that the sedentary conditions directly caused his blood clots." *Id.* at 7. Finally, plaintiff contends that his Coumadin treatment and accompanying

---

[2] Plaintiff also notes that according to his records, defendants filed their opposition one day late on February 4, 2011 (#49, p. 2). However, the court's docketing system shows that defendants' opposition was timely filed on February 3, 2011 (#41).

4

1 blood tests were discontinued due to budgetary cutbacks. *Id.* at 4.

2 The court issued a minute order on March 18, 2011, requesting that defendants produce updated medical and housing records so that it can "determine plaintiff's current housing arrangement [and] current treatment plan for his clotting condition" (#56, p. 1). Defendants' previous submissions only detailed plaintiff's housing arrangements through September 17, 2010, and his medical records only included entries through June 22, 2010. *Id.* at 2. Based on the these records the court could not accurately evaluate plaintiff's current need for injunctive relief.

In compliance with the court's order, defendants submitted an updated copy of plaintiff's offender information summary, plaintiff's current medical records, and a declaration from Dr. Aranas (#57 (*sealed*)).[3] The offender information summary reveals that NDOC transferred plaintiff from Lovelock Correctional Center to HDSP on November 3, 2010, and was approved at that time to be in protective segregation (#57, p. 10). Plaintiff was initially placed in administrative segregation due to a bed shortage, but the offender information summary states that plaintiff did not have any issues with this decision. *Id.* There is no subsequent entry indicating plaintiff's transfer from administrative segregation to protective segregation. *Id.* at 10-11.

Dr. Aranas's declaration states that plaintiff took Coumadin from March 3, 2009, through January 31, 2011. *Id.* at 14. Dr. Aranas examined plaintiff on January 31, 2011, and found that "there was no evidence of blood clots." *Id.* Dr. Aranas explained to plaintiff that "anticoagulation can be stopped after eight months and [he] further explained the risks of long-term use of Coumadin, which is dangerous and can cause brain hemorrhaging if taken when no longer necessary." *Id.* Dr. Aranas recommended that plaintiff switch to an aspirin regimen and plaintiff agreed. *Id.* On March 23, 2011, plaintiff requested to be placed back on Coumadin and Dr. Aranas obliged. *Id.*

In his declaration, Dr. Aranas further states that there is "no evidence in [plaintiff's] medical records that his blood clot was caused by sedentary conditions," and notes that close custody conditions do not force plaintiff to be sedentary. *Id.* at 15. He explains that an individual may

---

[3] Plaintiff filed an "Objection to Defendants' Notice of Compliance with the Courts [sic] Order to Produce Updated Medical Records and Offender Information Summary" (#59). The court recommends that this document be stricken, as plaintiff did not request the court's leave to file a response and the court did not request responsive briefing in its minute order (#56).

5

develop a blood clot if he "lay [sic] in bed without getting up for 24 hours or longer; however, there is no medical reason why [plaintiff] would need to be confined to his bed for 24 hours or longer and there is nothing in [plaintiff's] medical records showing that he was ever confined to his bed." *Id.* Dr. Aranas also addresses each proposed provision of plaintiff's personalized medical plan, and states that plaintiff already receives the care he requests or that the services plaintiff demands are not medically necessary. *Id.* at 16-18. Dr. Aranas concludes by stating:

> 20. Based on my own examination and a complete and thorough review of [plaintiff's] medical records, in my professional opinion, the medical evidence demonstrates that [plaintiff] has received at all relevant times and continues to receive to date appropriate medical treatment for his DVT;
>
> 21. The treatment [plaintiff] has received while at NDOC for his DVT is the same treatment he would receive if he were a private citizen under the care of a private physician.

*Id.* at 18. Finally, plaintiff's medical records confirm that as of March 23, 2011, plaintiff receives Coumadin. *Id.* at 21. Plaintiff's current classification is listed as "I-1, 10," which denotes: "Medically stable inmates requiring minimal or no periodic health care. Annual or biennial physical examination required. Lower bunk only." *Id.* at 20.

The court notes that the plaintiff is proceeding *pro se*. "In civil cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. DISCUSSION & ANALYSIS

### A. Discussion

#### 1. Preliminary Injunction Legal Standard

A preliminary injunction is an "extraordinary and drastic remedy" that is never awarded as of right. *Munaf v. Geren*, 553 U.S. 674, 688-90 (2008) (citations and quotation omitted). Instead, in every case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, ---U.S. ---, ---, 129 S.Ct. 365, 376 (2008) (citation omitted). The instant

motion requires that the court determine whether plaintiff has established the following: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter*, 129 S.Ct. at 374 (citations omitted).

Before *Winter*, courts in the Ninth Circuit applied an alternative "sliding-scale" test for issuing a preliminary injunction that allowed the movant to offset the weakness of a showing on one factor with the strength of another. *See Alliance for Wild Rockies v. Cottrell*, 622 F.3d. 1045, 1049-50 (9th Cir. 2010); *see also Beardslee v. Woodford*, 395 F.3d 1064, 1067 (9th Cir. 2005). In *Winter*, the Supreme Court did not directly address the continued validity of the Ninth Circuit's sliding-scale approach to preliminary injunctions. *See Winter*, 129 S.Ct. at 392 (Ginsburg, J., dissenting) ("[C]ourts have evaluated claims for equitable relief on a 'sliding scale,' sometimes awarding relief based on a lower likelihood of harm when the likelihood of success is very high . . . This Court has never rejected that formulation, and I do not believe it does so today."); *see also Alliance*, 622F.3d. at 1049. In light of the *Winter* decision, however, the Ninth Circuit has indicated, "[t]o the extent our cases have suggested a lesser standard, they are no longer controlling, or even viable." *Am. Trucking Assocs. v. City of L.A.*, 559 F.3d 1046, 1052 (9th Cir. 2009). Accordingly, plaintiff is required to make a showing on all four of the preliminary injunction requirements.

An even more stringent standard is applied where mandatory, as opposed to prohibitory preliminary relief is sought. The Ninth Circuit has noted that although the same general principles inform the court's analysis, "[w]here a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious about issuing a preliminary injunction." *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984). Thus, an award of mandatory preliminary relief is not to be granted unless both the facts and the law clearly favor the moving party and extreme or very serious damage will result. *See Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1979). "[I]n doubtful cases" a mandatory injunction will not issue. *Id.*

///

Finally, the Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Thus, Section 3626(a)(2) limits the court's power to grant preliminary injunctive relief to inmates. *Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a) . . . operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators-no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Gilmore*, 220 F.3d at 999.

**B.    Analysis**

Plaintiff seeks implementation of a sixteen-point personalized medical plan for DVT, though it appears from his briefing that his primary concerns are continued use of Coumadin and housing that does not require him to be sedentary (#13). Defendants argue that plaintiff's request is not narrowly drawn, that he does not suffer a likelihood of irreparable harm, and that his is unlikely to succeed on his Eighth Amendment claim because he has received adequate treatment for his condition (#41).

As an initial matter, the court agrees with defendants that plaintiff's personalized medical plan is overbroad and does not comport with the PLRA's mandate to design injunctive relief that is the least intrusive means necessary to address the harm. Plaintiff experienced a DVT, which is a serious medical condition for which he deserves adequate medical care. However, plaintiff's request that he receive care from a specialist not affiliated with the NDOC; his demand that the NDOC establish a specialty clinic for inmates with blood clots; his lengthy list of required, weekly medical tests; and his desire to receive daily medical attention and therapies far exceed the bounds of treatment medically indicated for his condition, according to NDOC medical staff. Even if plaintiff

1 were not incarcerated, he would be very unlikely to find a physician willing to suggest that such
2 intensive therapy is necessary for DVT. Therefore, the court's analysis focuses on plaintiff's access
3 to Coumadin and the provision of medically appropriate housing, as the remainder of plaintiff's
4 requests far exceed the PLRA's mandate that injunctive relief be "narrowly drawn."

### 1. Likelihood of Irreparable Harm

"Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction." *Winter*, 129 S. Ct. at 375. "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ( per curiam)). Courts generally look at the immediacy of the threatened injury in determining whether to grant preliminary injunctions." *Privitera v. Cal. Bd. of Med. Quality Assurance*, 926 F.2d 890, 897 (9th Cir. 1991).

Plaintiff argues that his previous blood clots were caused by his sedentary lifestyle, due to being housed in administrative segregation or in the infirmary. Defendants claim that there is no medical evidence that being sedentary caused plaintiff's blood clots, and note further that plaintiff requested to remain in protective custody or administrative segregation on many occasions due to his fear of other inmates.

The court agrees with plaintiff that blood clots present a substantial risk to plaintiff's health that could include death. Defendants do not dispute that DVT is a serious condition requiring close medical scrutiny, as evidenced by the numerous notes in plaintiff's record that indicate close observation of plaintiff's condition. However, the question before the court is not whether NDOC's treatment plan insures that plaintiff will never suffer another blood clot. The court notes that, as with many diseases, the cause of clotting may likely be a combination of several factors, none of which can be isolated and treated to provide a certain cure. Rather, the job of the court is to evaluate the medical treatment available to plaintiff to determine whether, due to the inadequacy of the patient treatment plan, plaintiff is more likely to suffer irreparable injury related to his condition than he

...

would be if he received a different housing assignment or ongoing treatment with Coumadin.

First, the court agrees with defendants that there is no evidence in plaintiff's medical record that being housed in administrative segregation or protective custody caused plaintiff's past clots. In fact, the court notes that plaintiff's own request for injunctive relief includes a request to chart plaintiff's daily exercise and dietary intake in an effort to determine the cause of his blood clots. By this request, plaintiff acknowledges that the cause of his blood clots is uncertain. Regardless of the precise cause of plaintiff's clots, there is no clear showing that plaintiff is likely to suffer irreparable injury if he continues to be housed in administrative or protective segregation, as he has requested. NDOC has the unenviable task of balancing inmates' and the prisons' safety and security against the individual medical needs of inmates. Striking an appropriate balance between these needs is a challenge and the court believes NDOC successfully achieved that balance in this case. Plaintiff is housed in administrative or protective custody for his safety. However, NDOC granted plaintiff at least two hours of time per day to be mobile for a period of three months and plaintiff receives ongoing medical evaluation and treatment for his clotting condition. Further, as Dr. Aranas states in his declaration, plaintiff is not confined to his bed and is capable of exercising in his own cell as he deems necessary.

Second, plaintiff's complaint that his Coumadin prescription was discontinued due to a lack of funding is not substantiated. Dr. Aranas did recommend to plaintiff that he discontinue his use of Coumadin, citing the risks of long-term use of the medication when it is no longer necessary. Plaintiff agreed to switch from Coumadin to an aspirin regimen. However, a few months later he again requested to be put back on Coumadin. Dr. Aranas prescribed Coumadin to plaintiff once again. From plaintiff's medical records, it appears that he is on Coumadin currently; therefore, his request to be placed on the drug is moot, as he is not at risk of injury due to lack of Coumadin treatment for his condition.

Neither the court, nor medical professionals can predict with precision whether these measures will suffice for the duration of plaintiff's medical condition; changes to the treatment protocol may be necessary. However, the court and plaintiff do not possess the medical training

necessary to establish such a treatment plan. Therefore, in the absence of evidence to suggest that plaintiff requires additional exercise and medical intervention to prevent irreparable injury, the court leaves it to the sound discretion of the prison's medical staff to continuously monitor and care for plaintiff. This factor weighs in favor of defendants' position.

### 2. Likelihood of Success on the Merits

To obtain a preliminary injunction, plaintiff must offer evidence that there is a likelihood he will succeed on the merits of his claim. *Johnson*, 72 F.3d at 1430. "Likelihood of success on the merits" has been described as a "reasonable probability" of success. *King v. Saddleback Junior College Dist.*, 425 F.2d 426, 428-29 n.2 (9th Cir. 1970). Here, plaintiff's request for injunctive relief relates to defendants' alleged deliberate indifference to his blood clotting condition; therefore, plaintiff must demonstrate likelihood of success on his Eighth Amendment claim.

#### a. Eighth Amendment Deliberate Indifference to a Serious Medical Need

A prisoner's claim of inadequate medical care arises under the Eighth Amendment. The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). To prevail on an action alleging cruel and unusual punishment, a plaintiff's case must satisfy an objective standard – that the deprivation was serious enough to amount to cruel and unusual punishment, and a subjective standard – deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Wilson v. Seiter*, 501 U.S. 294, 297-304 (1991). A prison official violates the Eighth Amendment when he responds with deliberate indifference to an inmate's serious medical need. *Farmer*, 511 U.S. at 834.

The objective requirement of a "serious medical need" is met if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). In this circuit, examples of serious medical needs include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Lopez v. Smith*, 203 F.3d 1122, 1131

1  (9th Cir. 2000) (citations omitted).

2  The subjective standard of deliberate indifference requires "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835, (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). The requisite state of mind lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Id.* at 836. To prove deliberate indifference, plaintiff must demonstrate that prison staff denied, delayed, or intentionally interfered with medical treatment or that the way prison staff provided medical care indicates deliberate indifference, and that plaintiff sustained damages as a result of such conduct. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). Prison medical staff do not violate the Eighth Amendment simply because their opinion concerning medical treatment conflicts with the opinion of the inmate-patient. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). Moreover, "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference." *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam); *accord McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992).

Further, a difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). However, a prisoner can establish that such a difference of opinion amounted to deliberate indifference where "the course of treatment the doctors chose was medically unacceptable under the circumstances," and such a course of treatment was chosen "in conscious disregard of an excessive risk to the prisoner's health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citing *Williams v. Vincent*, 508 F.2d 541, 543-44 (2d Cir. 1974) (holding that inmate stated a claim for deliberate indifference where prison medical staff threw away the inmate's severed ear, told the inmate that 'he did not need [it],' and made no effort to reattach it)).

Here, plaintiff and defendant agree that DVT is a serious medical condition requiring treatment and ongoing monitoring. In fact, plaintiff's medical records reveal close scrutiny of his condition; a recommendation that he receive two hours per day of yard time for three months on

April 16, 2009; and ongoing treatment with Coumadin or aspirin. Plaintiff's primary complaint about his treatment seems to be that there was a five-day lapse of time between when he reported that he had symptoms of a DVT and the time that he received treatment. However, plaintiff's medical records do not indicate any harm due to this lapse in time, and a mere delay in treatment is not enough to state an Eighth Amendment claim. Further, plaintiff's disagreement with his treating physicians about the care he received does not state an Eighth Amendment claim, absent a showing of disregard for plaintiff's health. The court notes that rather than reflecting indifference to plaintiff's medical condition, plaintiff's medical records display careful monitoring and ongoing, personalized treatment of his clotting condition. Therefore, this factor weighs in favor of denying plaintiff's motion.

### 3. Balance of Hardships

The balance of hardships does not tip sharply in plaintiff's favor. Issuance of any preliminary injunctive relief would require this court to significantly interfere with the internal processes of the NDOC. Plaintiff's filing of this lawsuit will result in a determination regarding the adequacy of his medical care and plaintiff has not shown that during the pendency of this lawsuit he suffers risk of harm related to his current housing or treatment plan. Further, plaintiff's own requests for protective segregation highlight the risks to the safety and security of an institution inherent in housing inmates. Given that the court must accord "substantial weight" to the effects of injunctive relief on the operation of the prison, the court finds that the balance of hardships favors the defendants. *See* 18 U.S.C. § 3626(a)(2).

### 4. Public Interest

With respect to the public interest, the court must consider the public interest in issuing the injunction against the public interest in not issuing the injunction. Here, the public is not served where the court's order would compromise the safety and security of the prison, or where resolution of the instant lawsuit will provide adequate relief to the inmate.

Therefore, plaintiff's motion for temporary restraining order is denied.

///

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that plaintiff has not sufficiently shown that he will suffer irreparable injury. Nor has plaintiff presented any serious questions as to the merits of his claim. As such, the court recommends that plaintiff's motion for temporary restraining order and/or preliminary injunction (#13) be **DENIED**.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

### IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for temporary restraining order and/or preliminary injunction (#13) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that plaintiff's "Objection to Defendants' Notice of Compliance with the Courts Order to Produce Updated Medical Records and Offender Information Summary" (#59) be **STRICKEN**.

**DATED:** April 20, 2011.

_____
UNITED STATES MAGISTRATE JUDGE